Timothy P. Kingsbury (IL ARDC No. 6329936)
(admitted *pro hac vice*)
KINGSBURY LAW LLC
8 S. Michigan Ave., Ste. 2600
Chicago, Illinois 60603
Tel: (312) 291-1960
tim@kingsburylawllc.com

Ani Nazaryan (CA SB No. 351886)
KERKONIAN DAJANI, LLP
15915 Ventura Blvd., Ste. 203
Encino, California 91436
Tel: (312) 416-6180
anazaryan@kerkoniandajani.com

*Counsel for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUILLERMO MATA, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>ZILLOW GROUP, INC., a Washington corporation,<br><br>Defendant. | Case No. 24-cv-1095-DMS-VET<br><br>Hon. Dana M. Sabraw<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: December 20, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: 13A |

# TABLE OF CONTENTS


Table of Authorities ........ ii

I. INTRODUCTION ........ 1

II. FACTUAL ALLEGATIONS ........ 3

III. ARGUMENT ........ 4

A. Legal Standard ........ 4

B. Plaintiff States A Claim Under VPPA ........ 5

*i. Plaintiff sufficiently alleges Defendant is a "video tape service provider"* ........ 6

*ii. Plaintiff sufficiently alleges he is a "consumer"* ........ 9

*iii. Plaintiff is not required to identify each video he viewed on Defendant's platform* ........ 11

C. Plaintiff States A Claim Under CIPA ........ 12

*i. Plaintiff sufficiently alleges Meta directly violated CIPA* ........ 13

*ii. Plaintiff sufficiently alleges Defendant aided and abetted Meta* ........ 15

D. Defendant's Challenge To Plaintiff's Fraudulent Concealment And Tolling Allegations Is Premature ........ 17

IV. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases** **(pages)**

*Ade v. Viki, Inc.*,
No. 23-CV-02161-RFL, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ........... 12
*Ambrose v. Boston Globe Media Partners LLC*,
CV 21-10810-RGS, 2022 WL 4329373, (D. Mass. Sept. 19, 2022) ................. 12
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 4–5
*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ............................................................ 10
*Belozerov v. Gannett Co.*,
646 F. Supp. 3d 310 (D. Mass. 2022) ............................................................ 8
*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................ 13
*Campos v. Tubi, Inc.*,
716 F. Supp. 3d 623 (N.D. Ill. 2024) ............................................................ 12
*Cantu v. Tractor Supply Co.*,
No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) ..... 7
*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) ............................................................ 10
*Castillo v. Costco Wholesale Corp.*,
No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ... 14
*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ............................................................ 17
*Cole v. Quest Diagnostics, Inc.*,
No. 2:23-CV-20647-WJM, 2024 WL 3272789 (D.N.J. July 2, 2024) .............. 14
*Collins v. Toledo Blade,*
720 F. Supp. 3d 543 (N.D. Ohio 2024) ............................................................ 8

*D'Angelo v. Penny OpCo, LLC*,
No. 23-CV-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .... 16
*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .......... 9
*Esparza v. UAG Escondido A1 Inc.*,
No. 23CV0102 DMS(KSC), 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) . 15–16
*Fan v. NBA Properties Inc.,*
No. 23-CV-05069-SI, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024)............... 12
*Frawley v. Nexstar Media Grp. Inc.,*
No. 3:23-CV-2197-L, 2024 WL 3798073 (N.D. Tex. July 22, 2024) ............... 12
*Garcia v. Harley-Davidson Motor Co., Inc.*,
No. 19-CV-02054-JCS, 2019 WL 6050768 (N.D. Cal. Nov. 15, 2019)............ 18
*Gershzon v. Meta Platforms, Inc.*,
No. 23-CV-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .............. 14
*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023).......... 8
*Gross v. Int'l Stage Lines, Inc.,*
No. C21-0428-JCC, 2021 WL 2644573 (W.D. Wash. June 28, 2021) ............. 18
*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002-SPG-E, 2024 WL 3738055 (C.D. Cal. July 31, 2024) ..... 17
*Hernandez v. Jostens, Inc.*,
No. 223CV05227HDVRAO, 2024 WL 1135165 (C.D. Cal. Feb. 7, 2024) .... 6–7
*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 8
*In re Quality Systems, Inc. Securities Litig.*,
865 F.3d 1130 (9th Cir. 2017) .......... 5
*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 14–15

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................... 8
*In re Vizio, Inc., Consumer Priv. Litig.,*
2017 WL 11420284 (C.D. Cal. July 25, 2017) .................... 15
*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................... 14
*Jackson v. Fandom, Inc.*,
No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) .................... 7
*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) .................... 12
*Martinez v. D2C, LLC*,
No. 23-21394-CIV, 2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) .................... 12
*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .................... 1, 5
*Rodriguez v. Hershey Co.,*
No. 23-CV-398-L-DEB, 2023 WL 6798506 (S.D. Cal. Oct. 12, 2023) .................... 6
*Rodriguez v. JP Boden Servs. Inc.*,
No. 23-CV-00534-L-VET, 2024 WL 559228 (S.D. Cal. Feb. 12, 2024) ...... 7, 11
*Salazar v. Nat'l Basketball Ass'n,*
118 F.4th 533 (2d Cir. 2024) .................... 8, 10
*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .................... 13
*Sellers v. Bleacher Rep., Inc.*,
No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) .................... 8
*Smith v. Google, LLC*,
No. 23-CV-03527-PCP, 2024 WL 2808270 (N.D. Cal. June 3, 2024) .................... 14
*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) .................... 7

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023) .......... 11

*Toy v. Life Line Screening of Am. Ltd.*,
No. 23-CV-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ..... 15–16

**<u>Statutes</u>**

18 U.S.C. §§ 2510 .......... 13

18 U.S.C. § 2710 .......... *passim*

Cal. Penal Code § 630 *et seq.* .......... *passim*

**<u>Other Authorities</u>**

S. Rep. No. 100-599 (1988) .......... 1

Plaintiff Guillermo Mata ("Plaintiff") submits this Memorandum of Points and Authorities in opposition to Defendant Zillow Group, Inc.'s ("Defendant") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss," Dkt. 7).

## I. <u>INTRODUCTION</u>

In 1988, Congress passed the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), "to preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988). VPPA was the latest in "a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals," *Id.*, at 2, and "allows consumers to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers . . . Consistent with Congress's purpose, the statute's language is broad." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065–66 (9th Cir. 2015). VPPA generally prohibits companies that deliver audiovisual content as part of their business from disclosing to third parties records of their customers' or subscribers' viewing habits without first obtaining their informed, written consent.

Defendant owns and operates Zillow.com, a popular real estate website where property owners and real estate agents can display homes for sale or rent. As such, Defendant's business model relies on attracting sellers, agents, buyers, and renters to visit its website by effectively showcasing real estate properties better than its competitors. One way Defendant has done is by developing its website to offer video tour walkthroughs. These, as their name suggests, are video tours of a property which prospective buyers or renters can search for and view. Defendant also encourages visitors to its website to create a Zillow account by providing Defendant with their email. Having an account permits Defendant's account holders to save their real estate searches, including video tour content, for later viewing. Unbeknownst to Defendant's subscribers, however, Defendant has embedded surreptitious third-party

tracking technology into its website, such as the Meta Pixel, which tracks what those subscribers do and watch on Defendant's website and transmits that information to the technology's vendors (in the case of the Meta Pixel, the information is disclosed to Meta Platforms, Inc. ("Meta"), the owner of Facebook).

Plaintiff is one of Defendant's account holders, and a Facebook user, who has viewed many video tour walkthroughs on Defendant's website. When he did, the Meta Pixel installed on Defendant's website transmitted records of the specific videos Plaintiff requested and viewed to Meta, along with Plaintiff's personally-identifying information such as his Facebook ID, without Plaintiff's consent. Accordingly, Plaintiff, a California resident, filed this putative class action against Defendant for violations of VPPA, and also the California Invasion of Privacy Act, Cal. Penal Code § 630 et seq. ("CIPA"). He alleges that Defendant violated CIPA by aiding and abetted its tracking-technology vendors such as Meta in intercepting Plaintiff's communications with Defendant.

In its Motion to Dismiss, Defendant argues Plaintiff's VPPA claim fails because (a) Defendant is not a "video tape service provider" subject to VPPA, (b) Plaintiff is not a "consumer" entitled to VPPA's protections, and (c) Plaintiff fails to sufficiently allege that Defendant disclosed the specific videos he viewed. These arguments are meritless. As Plaintiff alleges, Defendant qualifies as a videotape service provider because it is engaged in the business of delivering audiovisual content; in fact, Defendant has developed and promoted that capability on its website as a means of attracting sellers and agents. Plaintiff also sufficiently alleges he is one of Defendant's subscribers, and thus a "consumer for VPPA's purposes, because he created an account with Defendant that enabled him to save Defendant's video content for later viewing. Moreover, Plaintiff directly alleges that Defendant shared which specific videos he watched with its vendors, including Meta—Defendant simply overlooks those allegations.

With respect to Plaintiff's CIPA claim, Defendant contends that Plaintiff has insufficiently alleged a predicate CIPA violation by Meta, and also suggests he must plead more to establish that Defendant aided or abetted that violation. As with its argument concerning Plaintiff's VPPA claim, Defendant overlooks Plaintiff's well-pled allegations as well as case law finding those allegations sufficient to state a claim.

For those reasons, and as discussed in greater detail below, Defendant's Motion to Dismiss should be denied in its entirety.

## II. FACTUAL ALLEGATIONS

Plaintiff's allegations and claims are straightforward. Defendant owns and operates Zillow.com, one of the largest online real estate marketplaces in the nation. As such, a key element of Defendant's business model is to showcase for-sale residential properties and properties available for lease on its website using photographic and video content. (Class Action Complaint, Dkt. 1 ("Compl."), ¶ 1). Thus, Defendant's business depends on attracting real estate agents or sellers to showcase their properties on Defendant's website. Defendant attempts to distinguish itself from competitors in the residential real estate market by arming listing agents and owners with the ability to leverage Defendant's technology in order to best advertise their properties. (*Id.* ¶ 17). One such technology offering is Defendant's video tour walkthroughs, which are video presentations of a given real estate listing accompanied by an audio soundtrack. In fact, for videos uploaded directly through Defendant's video submission portal, Defendant has set specific video specifications such as the format, length, and sound requirements for the uploaded content. (*Id.* ¶ 19). Defendant promotes this capability by telling listing agents and property owners to "Get more views on your listings with a video tour" and that "adding a video walkthrough to your listing boosts the views it will garner on Zillow.com, which helps you find an interested buyer more quickly." (*Id.* ¶ 18).

In addition, Defendant has also knowingly deployed third-party tracking pixels and other third-party tracking technologies on its Zillow.com webpage,

including the Meta Pixel. (*Id.* ¶ 20). The Meta Pixel is a tracking technology programmed into Defendant's website code which transmits Facebook users' Zillow website activity, such as requests to view Defendant's video tour walkthroughs, to Meta along with the subscriber's Facebook ID. The Facebook ID is a unique identifier assigned to each Facebook user. For instance, typing www.facebook.com/[subscriber's Facebook ID] into a web browser permits anyone to find that subscriber's Facebook account. (*Id.* ¶ 20).

Plaintiff, a Facebook user, registered with Defendant to become a Zillow account holder. To do so, he was required to provide Defendant with his email address. (*Id.* ¶¶ 26–27). After registering, he requested and viewed numerous video walkthrough tours on Defendant's website. (*Id.* ¶ 28). Whenever he did so, Defendant, through the Meta Pixel, disclosed records of which specific videos Plaintiff requested to Meta. (*Id.* ¶ 29). In fact, Plaintiff's Facebook profile shows that Defendant has shared information with Meta concerning Plaintiff's Zillow site activity, including specific records of the content Plaintiff requested or viewed (*Id.* ¶ 30 (citing *Review your activity off Meta technologies*, FACEBOOK, https://www.facebook.com/help/22072566 96182627 (explaining that the Meta Pixel transmits to Meta site interactions such as "viewing content" and "searching for an item").

Defendant does not disclose to its subscribers that records of their requests for audiovisual content and their viewing activity will be shared with third parties. (Compl. ¶ 25). Nor has Plaintiff ever given his consent, written or otherwise, to those transmissions. (*Id.* ¶ 31).

## III. ARGUMENT

### A. Legal Standard.

A complaint will survive a Rule 12(b)(6) motion as long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense," *Id.* at 679, but a district court is required to "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *In re Quality Systems, Inc. Securities Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). Thus, the Court must construe each of Plaintiff's allegations of material fact in his favor.

**B. Plaintiff States A Claim Under VPPA.**

VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" about one of its "consumers" to any person, absent the consumer's informed, written consent. *See Mollett*, 795 F. at 1066 (noting that "[c]onsistent with Congress's purpose, the statute's language is broad").

In his Complaint, Plaintiff alleges that Defendant is a "video tape service provider" because it is engaged in the business of delivery of audiovisual content (Compl. ¶ 44), alleges that he is one of Defendant's "consumers" because he is a registered user of Defendant's website (*Id.* ¶ 45), and alleges that Defendant knowingly disclosed his "personally identifiable information," *i.e.* records of his requests for audiovisual content on Defendant's website, to its third-party vendors without his consent through the vendors' tracking software (such as the Meta Pixel) which Defendant embedded in its website. (*Id.* ¶¶ 45). In its Motion, Defendant argues that it does not qualify as a "video tape service provider," disputes that Plaintiff is a "consumer," and contends that Plaintiff has not sufficiently alleged Defendant's disclosure of information regarding Plaintiff's requests for or viewing of specific video materials. Each of these arguments ignores Plaintiff's well-pled allegations and should be rejected.

***i. Plaintiff sufficiently alleges Defendant is a "video tape service provider."***

As Defendant acknowledges, VPPA defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Defendant does not dispute that its video tour walkthroughs qualify as "similar audio visual materials" under this definition.

Rather, Defendant quibbles with Plaintiff's straightforward and detailed allegations regarding how Defendant is "engaged in the business" of delivering video tour walkthroughs. (Compl., ¶¶ 17–19). Defendant makes money by attracting real estate agents to use Defendant's technology to showcase their properties on Defendant's website, as opposed to a competitor's platform. In other words, the primary purpose of Defendant's website (and thus its business) is to *showcase real estate* using Defendant's proprietary audiovisual technology, such as video tour walkthroughs. Indeed, Defendant sets certain requirements for the videos displayed on its platform. (*Id,*, ¶ 19 n.3).

Ignoring these allegations, Defendant argues that its video tour walkthroughs are just "marketing tools," making Plaintiff's claim here analogous to that in *Rodriguez v. Hershey Co.,* No. 23-CV-398-L-DEB, 2023 WL 6798506 (S.D. Cal. Oct. 12, 2023). But there, the audiovisual content was used to market Hershey's *own* chocolate products, leading the court to find that delivering audiovisual material is only "ancillary to [Hershey's] true business purposes." 2023 WL 6798506, at *2. Defendant's other cited authorities are distinguishable for the same reason. In *Hernandez v. Jostens, Inc.*, No. 223CV05227HDVRAO, 2024 WL 1135165 (C.D. Cal. Feb. 7, 2024), the court held that the defendant did not qualify as a "video tape service provider" because the videos were "aimed toward the sale of *Defendant's products* and are a marketing tool to promote *Defendant's brand and website*,

*nothing more*." 2024 WL 1135165, at *2 (C.D. Cal. Feb. 7, 2024) (emphasis added). In *Cantu v. Tractor Supply Co.*, No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024), the video content at issue was a story about the defendant's employees who recovered from cancer, leading the court to find that using videos for its own "brand awareness" did not suggest that delivering audio visual content was part of the defendant's business model. 2024 WL 1601257, at *4. In *Rodriguez v. JP Boden Servs. Inc.*, No. 23-CV-00534-L-VET, 2024 WL 559228 (S.D. Cal. Feb. 12, 2024), the video at issue was a "six-second loop with no dialogue of a woman walking on the beach," leading the court to conclude that delivering audio visual content was not a "a defining feature, or at least not a *de minimus* feature," of the defendant retailer's business. 2024 WL 559228, at *4. In short, *Hershey*, *Jostens*, *Cantu*, and *JP Boden* are all inapposite because the defendants in each case either used audiovisual content to promote their *own* products or the audiovisual content lacked even a *de minimus* connection with the Defendant's business goals.

Here, in contrast, Plaintiff plainly alleges that Defendant's business or "field of endeavor" itself is to showcase others' real estate properties using audiovisual tools which Defendant has specifically *developed* – and *marketed* – for that purpose. (Compl., ¶¶ 17–19). Thus, Defendant is no different from other companies California federal courts have found subject to VPPA because delivery of audiovisual content was central to their business, even though that content may have been free to consumers or created by third parties. *See, e.g., Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023) ("[V]ideo-hosting websites need not charge fees to viewers to qualify as video tape service providers under the VPPA"); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022) ("[I]t is reasonable to think that developing a website to deliver video content requires . . . significant tailor[ing] to serve that purpose." (internal quotations omitted)); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402

F. Supp. 3d 767, 799 (N.D. Cal. 2019) (observing that if an entity "'regularly delivers' video content to users and maintains a cache of videos and visual materials," then it is "plausible to conclude" that the entity "engages in the business of delivering audio visual materials, and that its business is 'significantly tailored to serve that purpose'"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017) (sustaining VPPA claim where the defendant "has developed a product intimately involved in the delivery of video content to consumers, has created a supporting ecosystem to seamlessly deliver video content to consumers . . . and has marketed its product" as a means to view audiovisual content); *see also Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) ("[T]he degree to which the defendant's business model is tailored to delivery of audio visual materials" is a factual question unsuitable for resolution on a motion to dismiss). Moreover, courts outside the Ninth Circuit have consistently found that the plain language of VPPA's definition of "video tape service provider" covers businesses that engage in the delivery of audiovisual materials, no matter whether that is their primary business or not. *See, e.g.*, *Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533, 548 (2d Cir. 2024) ("Congress cast a wide net in defining 'video tape service provider,' to ensure that businesses dealing in audiovisual goods or services satisfy the definition even if they also deal in non-audiovisual goods or services"); *Collins v. Toledo Blade,* 720 F. Supp. 3d 543, 554 (N.D. Ohio 2024) (sustaining VPPA claim where "Defendants are in the business of delivering news and journalism to the public, and that they format this content in both the written word and video"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023) (rejecting the defendant's argument that because its website provided content in addition to prerecorded audiovisual materials, VPPA did not apply to it); *Belozerov v. Gannett Co.,* 646 F. Supp. 3d 310, 314 (D. Mass. 2022) (crediting the plaintiff's argument that "the VPPA is not limited to entities

that are *primarily* engaged in the business of providing video content" (emphasis added)).

In sum, Plaintiff's well-pled allegations (1) that Defendant's real estate showcasing business relies on the delivery of prerecorded audiovisual content, such as video tour walkthroughs; and (2) that Defendant developed, promoted, and tailored that capability for its business purposes, are more than sufficient at this stage for the Court to determine that Defendant qualifies as a "video tape service provider."

***ii. Plaintiff sufficiently alleges he is a "consumer."***

Next, Defendant contends that Plaintiff is not a "consumer" under VPPA. Notably, Defendant acknowledges that VPPA's definition of "consumer" covers "subscriber[s] of goods or services from a video tape service provider," 18 U.S.C. § 2710(a)(1), acknowledges that Plaintiff alleges he created a Zillow user account by providing Defendant with his email address, and acknowledges that having an account permitted him to save Defendant's audiovisual content for repeated viewing (Compl. ¶¶ 22, 26). Nonetheless, Defendant suggests that Plaintiff does not qualify as one of its "subscribers" because, according to Defendant, he fails to allege an "ongoing relationship" with Defendant, because Defendant's subscription was free, and because his subscription did not give him access to any exclusive audiovisual content. Each argument lacks merit.

With respect to Defendant's first argument, the Complaint clearly alleges that Plaintiff's relationship with Defendant has been substantial and ongoing; indeed, the Complaint features a screenshot showing that Defendant has shared Plaintiff's Zillow website activity with Meta on at least 18 occasions—demonstrating that Plaintiff has used Defendant's website extensively. (Compl. ¶ 30). Defendant cites *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015), but that case is inapposite because there, the plaintiff "did not sign up for or establish an account with" the defendant at all, and "did not provide any personal information" to the

defendant. 803 F.3d at 1257. Here, Plaintiff *did* establish a Zillow account with Defendant, and *did* provide Defendant with his personal information. *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015), is similarly distinguishable because there, the plaintiff did not "'sign up,' register for an account, establish a user ID or profile, download an app or program, or take any action to associate herself with [the defendant]." Here, Plaintiff affirmatively "signed up" with Defendant in order to gain the benefits of a Zillow account.

In any event, *Austin-Spearman* is of questionable persuasive value following the Second Circuit's recent decision in *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024). In *Salazar*, the Second Circuit undertook a lengthy analysis of VPPA's statutory framework and concluded that an individual's provision of valuable personal information (including an email address) in order to register for a defendant's service – regardless of whether that service is directly connected to audiovisual content – renders that individual a "subscriber" for VPPA's purposes. 118 F.4th at 549, 552–553 ("We agree with both the Eleventh and First Circuits that someone doesn't have to spend money to be a VPPA 'subscriber'"). The court's analysis centered on the absence of any reference to "audio visual materials" in VPPA's definition of "consumer." Because other VPPA definitions include that language, the Second Circuit determined that Congress meant for "consumer" to apply broadly and have no audiovisual limitation. *Id.* at 547.

Defendant also relies heavily on *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90 (S.D.N.Y. 2023), failing to recognize that *Salazar* directly overruled that decision as well. *Compare Carter*, 670 F. Supp. 3d at 99–100 (dismissing claims because plaintiffs subscribed to the defendant's newsletter, not its separate online video content) *with Salazar,* 118 F.4th at 549 (VPPA's broad definition of "consumer" "should be understood to encompass a renter, purchaser, or subscriber of *any* of the provider's 'goods or services'—audiovisual or not") (emphasis in original).

Though the Ninth Circuit has yet to analyze VPPA's definition of "consumer," Defendant cites certain California district court decisions pre-dating *Salazar* which found that there must be "a nexus between the alleged subscription and the video content at issue." *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1062 (S.D. Cal. 2023); *JP Boden Servs*., 2024 WL 559228, at *4 (relying on *Carter*, which *Salazar* overruled). However, even if this Court were to reject the Second Circuit's thoughtful statutory analysis in *Salazar* and find that there must be a "nexus" between Plaintiff's subscription and Defendant's audiovisual content, Plaintiff has sufficiently alleged such a nexus here. Specifically, Plaintiff alleges that registering with Defendant and creating a Zillow account grants users the ability to save Defendant's audiovisual content for later viewing—a benefit unavailable to the general public. (Compl. ¶ 22).

Thus, regardless of whether the Court follows *Salazar*'s broad view of the definition of "consumer" or prefers the narrower view endorsed by certain Ninth Circuit district courts, Plaintiff's allegations are sufficient to establish that he is a "subscriber" and thus "consumer" under VPPA.

***iii. Plaintiff is not required to identify each video he viewed on Defendant's platform.***

Finally, Defendant pretends that Plaintiff's Complaint fails to identify the specific video content he watched on Defendant's website. However, the Complaint does exactly that by identifying Defendant's video walkthrough tours as audiovisual content (which Defendant does not dispute), alleging that he viewed many such videos, alleging that Defendant disclosed to its vendors, including Meta, "records of which specific videos" Plaintiff watched along with his PII, and displaying a screenshot from his Facebook account demonstrating that Defendant shared records of his "viewing content" and search requests with Meta on numerous occasions. (Compl. ¶¶ 19, 28, 29, 30).

To the extent Defendant argues that Plaintiff's Complaint must identify each particular video he watched, courts have roundly rejected that position at the pleadings stage. *See, e.g., Frawley v. Nexstar Media Grp. Inc.,* No. 3:23-CV-2197-L, 2024 WL 3798073, at *6 (N.D. Tex. July 22, 2024)*, report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024) (the plaintiff "is not required to allege the specific videos he watched"); *Ade v. Viki, Inc.*, No. 23-CV-02161-RFL, 2024 WL 1880153, at *2 (N.D. Cal. Mar. 28, 2024) (rejecting argument that plaintiffs must "allege the specific video titles they viewed"); *Fan v. NBA Properties Inc.,* No. 23-CV-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (there is no requirement "that [the plaintiff] disclose the title of the specific videos that he purchased"); *Martinez v. D2C, LLC*, No. 23-21394-CIV, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (VPPA plaintiffs need not "identify the actual titles that they allege were disclosed"); *Ambrose v. Boston Globe Media Partners LLC*, CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (finding sufficient a plaintiff's allegations that the provider defendant disclosed "information about what videos he has watched on the [provider's] website").

Defendant cites *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023), but there, the plaintiff affirmatively pled himself out of court by alleging the defendant sent to Facebook just the "name of the webpage that a user accessed," which the court distinguished from a record of viewing a video on that webpage. 657 F. Supp. 3d at 284–85. Here, in contrast, Plaintiff specifically alleges Defendant sent Meta "records of which specific videos" Plaintiff watched (Compl. ¶ 29), a fact that must be accepted as true and provides Defendant with more than sufficient notice under Rule 8. *See Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 637 (N.D. Ill. 2024) (a VPPA plaintiff "does not need to plead the circumstances of every alleged disclosure with particularity. This is especially so given the informational

asymmetry at play; [the defendant] would not, of course, have made [the plaintiff] privy to any potential disclosures").

In short, because Plaintiff has sufficiently alleged that Defendant is a "video tape service provider," sufficiently alleged that he is a "consumer," and sufficiently alleged that Defendant disclosed records of which specific videos he watched on Defendant's website to third parties, Defendant's request for dismissal of Plaintiff's VPPA claim should be denied.

### C. Plaintiff States A Claim Under CIPA.

Plaintiff states a claim against Defendant under CIPA because he sufficiently alleges (1) that Defendant's third-party vendors used automated tracking technology, including Meta through its Pixel, to read or learn the contents or meaning of messages, reports, or communications between Plaintiff and Defendant; and (2) that Defendant aided, abetted, agreed with, and conspired with its vendors in those efforts for its own commercial purposes. (Compl. ¶¶ 23–25, 29–30, 57–60).

#### *i. Plaintiff sufficiently alleges Meta directly violated CIPA.*

CIPA § 631(a) prohibits third parties to a communication from "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing] or attempt[ing] to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state." Cal. Penal Code § 631(a).

Defendant first disputes that Plaintiff sufficiently alleges Meta's interception of the "contents or meaning" of any "message, report, or communication" between Plaintiff and Defendant. Federal courts in California analyze an alleged CIPA violation in the same way as a federal Wiretap Act violation, 18 U.S.C. §§ 2510–23. *See, e.g., Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). The Ninth Circuit has held that "contents" of an online communication under the Wiretap Act "refers to the

intended message conveyed by the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Here, Defendant pretends that Plaintiff only alleges the transmission of his "record information," *i.e.* his name, address, or other identity information, to Meta. To the contrary, Plaintiff clearly alleges that Meta intercepted the "intended message" of his communications with Defendant because whenever he requested to view audiovisual content on Defendant's website, the Meta Pixel transmitted to Meta information concerning which specific videos Plaintiff requested, *in addition to* record information such as Plaintiff's name, email address, or Facebook ID (Compl. ¶ 29). In fact, Plaintiff's Complaint cites Meta's own statements that its Pixel transmits information about "viewing content" and "searching for an item." (*Id.* ¶ 29 n.4).

Courts have consistently sustained federal Wiretap Act or CIPA § 631(a) claims involving the Meta Pixel or similar pixel technology, finding that such technology transmits "contents" of communications and not just "record information." *See, e.g.*, *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *4 (W.D. Wash. Nov. 14, 2024) (finding that the plaintiffs' search information transmitted to Meta constitutes "contents" of a communication under the Wiretap Act and CIPA); *Cole v. Quest Diagnostics, Inc.*, No. 2:23-CV-20647-WJM, 2024 WL 3272789, at *4 (D.N.J. July 2, 2024) (information allegedly intercepted by the Meta Pixel "constitutes content under CIPA"); *Smith v. Google, LLC*, No. 23-CV-03527-PCP, 2024 WL 2808270, at *5 (N.D. Cal. June 3, 2024) (sustaining CIPA claim because the complaint alleged "the kinds of information that the [pixel technology] would have been able to transmit, and it alleges the mechanism for transmission"); *Gershzon v. Meta Platforms, Inc.*, No. 23-CV-00083-SI, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) (same); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795, 798 (N.D. Cal. 2022) (sustaining Wiretap Act and CIPA claims where plaintiffs "put forward evidence that Meta receives information through the Pixel" and the information transmitted to Meta

by its Pixel would "not merely reveal the name of a Facebook user or group"); *In re Vizio, Inc., Consumer Priv. Litig.,* No. 816ML02693JLSKES, 2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017) (holding that software that automatically sends information about programming displayed on a TV intercepts "contents" of a communication because the "intended message conveyed by the communication is the program that the consumer is watching").

*None* of Defendant's cited cases involved the Meta Pixel and are thus inapposite. Because Plaintiff has "put forward evidence that Meta receives information through the Pixel" and the information transmitted to Meta would "not merely reveal the name of a Facebook user or group," *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795, his allegations are sufficient for the Court to reasonably infer that Meta intercepted "contents" of his communications at this stage.

Second, Defendant suggests that Plaintiff fails to allege his communications were intercepted by Meta while "in transit." (Dkt. 7-1 at 14). Defendant ignores, however, that Plaintiff specifically alleges that "whenever" he requested audiovisual content from Defendant, that information was passed to Meta through its Pixel software, from which this Court can plausibly infer that the transmission occurred in "real-time." Indeed, this Court found similar allegations sufficient in *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS(KSC), 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (Sabraw, J.) ("[Allegations that webchats are intercepted in real time through the use of computer code provides sufficient factual detail to support the "in transit" requirement"). Or stated differently, Plaintiff's detailed allegations regarding the "when" and "how" of Meta's interceptions of his communications are sufficient at this stage to put Defendant on notice of the claim against it. *See Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-04651-RFL, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) (finding "in transit" element satisfied where "the complaint offers highly detailed allegations about how Pixel works and how the alleged interception occurs"); *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL

7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party [vendor]").

In short, Plaintiff's Complaint contains allegations which – if accepted as true as they must be at this stage – are sufficient for the Court to infer that Meta unlawfully intercepted Plaintiff's communications with Defendant in violation of CIPA § 631(a).

***ii. Plaintiff sufficiently alleges Defendant aided and abetted Meta.***

Defendant also contends that Plaintiff's allegations regarding how Defendant aided, abetted, agreed with, employed, or conspired with Meta in its predicate violation of § 631(a) are merely "conclusory." But Defendant wholly ignores or shortchanges Plaintiff's allegations throughout his Complaint that Defendant "knowingly" deployed the Meta Pixel and other third-party tracking technology on its website "for advertising purposes" and "to increase its profits," and knew that its use of such technology would result in the disclosure of user communications to third parties because "the entire purpose of implanting" that technology was so that Defendant could more efficiently target its subscribers with advertisements. (Compl. ¶¶ 3, 21, 60).

At least one other court has found allegations that a CIPA defendant deployed pixel-tracking technology for its own advertising benefit are sufficient to state an "aiding or abetting" CIPA claim. *See Toy*, 2024 WL 1701263, at *1 (sustaining "aiding and abetting" CIPA claim where the "complaint alleges that Life Line aided Google and Facebook in intercepting users' interactions with [the defendant's] website" and where "[the defendant] allegedly purposely installed these tracking technologies to optimize its advertising and marketing."). Moreover, in *Esparza*, this Court considered the common law definition of "aiding and abetting" and noted that the plaintiff supported such a finding "by alleging that [the defendant] embedded [its vendor's] software code into its website." 2024 WL 559241, at *6 (Sabraw, J.). Here,

Plaintiff alleges the same: that Defendant knowingly embedded third-party tracking technology such as the Meta Pixel in its website. In *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002-SPG-E, 2024 WL 3738055 (C.D. Cal. July 31, 2024), the court also considered the common law definition and found allegations "that [the defendant], itself, embeds the allegedly violative [vendor's] software, that Defendant knows that [the vendor's] software intercepts and collects consumer communications without their knowledge or consent, and that Defendant benefits from [the vendor's] software" sufficient, at the pleading stage, to state a claim under § 631(a). 2024 WL 3738055, at *6. Like the plaintiff in *Heiting*, Plaintiff alleges that Defendant purposefully incorporated Meta's Pixel technology in its website to collect its users' communications, without their consent, and knew that the technology would do so because the entire purpose of embedding such technology in its website was to enhance Defendant's advertising efforts on other platforms.

Thus, because Plaintiff has adequately pled Meta's direct violation of § 631(a) as well as Defendant's efforts to aid, abet, or conspire with Meta in that violation, Plaintiff has stated a claim against Defendant under CIPA.

**D. Defendant's Challenge To Plaintiff's Fraudulent Concealment And Tolling Allegations Is Premature.**

Under Ninth Circuit precedent, tolling questions "ordinarily require[] reference to matters outside the pleadings, and [are] not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993). Moreover, Defendant does not argue in its Motion to Dismiss that either of Plaintiff's claims are stale or untimely. Thus, the Court should defer consideration of any tolling or limitations issues to the class certification or summary judgment stages of this case when – and if – limitations issues become relevant and ripe with the benefit of discovery.

In any event, Defendant's argument that Plaintiff's Complaint does not sufficiently allege fraudulent concealment is meritless. The Complaint sets forth sufficient facts to toll the VPPA and CIPA statutes of limitation under the fraudulent concealment doctrine because each statute imposes a disclosure duty. *Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-CV-02054-JCS, 2019 WL 6050768, at *9 (N.D. Cal. Nov. 15, 2019) (In light of the consensus among California courts that any duty of disclosure can support a *claim* for fraudulent concealment . . . the Court concludes that the California Supreme Court, if faced with the issue, would likely hold omission in the face of a duty to disclose sufficient to support tolling based on fraudulent concealment[.]").

As Plaintiff alleges, VPPA required Defendant to obtain "informed, written consent" from Plaintiff and the putative class members before disclosing their video-viewing histories to third parties. (Compl. ¶¶ 4, 43). Similarly, CIPA prohibited Defendant from aiding and abetting Meta's interception of his communications with Defendant "without the consent of all parties to the communication." (*Id.*. ¶¶ 55, 59). In other words, Defendant's duties under both statutes to obtain Plaintiff and the Class members' consent required Defendant to inform them that the surreptitious third-party tracking technology it embedded in its website, including the Meta Pixel, would share their video-viewing histories and communications with third parties. Plaintiff specifically alleges that Defendant failed to do so. (*Id.* ¶¶ 25, 61). Thus, Plaintiff's allegation that he and the Class members were ignorant of information essential to their claims, without any lack of diligence on their part, is eminently plausible. *See Gross v. Int'l Stage Lines, Inc.,* No. C21-0428-JCC, 2021 WL 2644573, at *2 (W.D. Wash. June 28, 2021) (at the pleading stage, "when a plaintiff has alleged facts 'showing the *potential* applicability' of tolling, dismissal is not appropriate.") (quoting *Cervantes*, 5 F.3d at 1277).

Accordingly, the Court should reject Defendant's request for dismissal of Plaintiff's tolling claims and reserve consideration of any limitations or tolling questions until and only if those issues become relevant.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.[1]

Dated: November 22, 2024

Respectfully submitted,

GUILLERMO MATA, individually and on behalf of similarly situated individuals

By: /s/ *Timothy P. Kingsbury*
Timothy P. Kingsbury
*One of Plaintiff's Attorneys*

Timothy P. Kingsbury (IL ARDC No. 6329936)
(admitted *pro hac vice*)
KINGSBURY LAW LLC
8 S. Michigan Ave., Ste. 2600
Chicago, Illinois 60603
Tel: (312) 291-1960
tim@kingsburylawllc.com

Ani Nazaryan (CA SB No. 351886)
KERKONIAN DAJANI, LLP
15915 Ventura Blvd., Ste. 203
Encino, California 91436
Tel: (312) 416-6180
anazaryan@kerkoniandajani.com

*Counsel for Plaintiff and the Putative Class*

---

[1] Should the Court grant Defendant's Motion in whole or in part, Plaintiff requests that any such dismissal be made without prejudice to provide Plaintiff with an opportunity to correct any curable defects in his pleading.

**CERTIFICATE OF SERVICE**

I certify that on November 22, 2024, I electronically filed the foregoing *Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss* with the Clerk of Court using the CM/ECF system, which will cause a copy of said document to be electronically transmitted to all counsel of record.

*/s/ Timothy P. Kingsbury*
Timothy P. Kingsbury