SEAN D. FLAHERTY (SBN: 272598)
sflaherty@grsm.com
HAZEL MAE B. PANGAN (SBN: 272657)
hpangan@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
ZILLOW GROUP, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GUILLERMO MATA, individually and on behalf of similarly situated individuals,

Plaintiff,

v.

ZILLOW GROUP, INC., a Washington corporation,

Defendants.

CASE NO. 3:24-cv-1095-DMS-VET
Judge: Hon. Dana M. Sabraw

**DEFENDANT ZILLOW GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF GUILLEMO MATA'S COMPLAINT**

Hearing Date: Dec. 20, 2024
Hearing Time: 1:30 p.m.
Courtroom: 13A

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Unable to state a claim under applicable VPPA and CIPA law, Plaintiff asks the Court to apply legal standards that are either grounded in no case law at all or which courts in this district have squarely rejected. For example, Plaintiff claims that Zillow can be held liable under VPPA if even a "*de minimis*" portion of its business relates to video content even though courts overwhelmingly conclude video content must be the *focus* of Zillow's business. As a real estate marketplace, Zillow is not in the business of distributing video content akin to a video rental store or any other business that exists primarily to publish videos, and this Court should not countenance Plaintiff's attempt to radically expand VPPA to include businesses like Zillow.

The Court should also reject Plaintiff's attempts to salvage his barebones CIPA claim. Indeed, courts in this district require plaintiffs to plead facts establishing that their communications with the defendant were simultaneously intercepted when sent, and they dismiss claims that fail to meet this standard. Yet, Plaintiff argues he satisfied his burden by simply inserting one word into his Complaint: "whenever." Even if that one word was sufficient under *Twombly* (it is not), Plaintiff's other allegations make clear that any alleged "interception" occurred *after* he sent his communications to Zillow, which is fatal to his claim. For these reasons and others, the Court should grant Zillow's motion to dismiss.

## I. PLAINTIFF'S VPPA CLAIM FAILS

### A. Zillow is Not a "Video Tape Service Provider"

Plaintiff attempts to shoehorn Zillow, a real estate marketplace platform, into the definition of a "videotape service provider," but his arguments fail for several reasons.

*First*, several cases cited by Zillow (*Hershey, Jostens, Cantu,* and *JP Boden*) make clear that a party is not a "video tape service provider" subject to VPPA unless the *focus* of its business is the provision of video content. That interpretation is most consistent with the purpose of VPPA, considering Congress promulgated VPPA in response to a *video rental store's* disclosure of a customer's list of video tape rentals. Mot. to Dismiss at 3-4. Plaintiff nevertheless argues that this Court should extend VPPA liability to any company that uses videos for even a "*de minimis*" component of its business. Opp. at 7. That is not the law. *See, e.g., Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 995 (S.D. Cal. 2023) (the question is whether the "*primary*

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*purpose* [of defendant's business] is to deliver audio-visual content to users.") (emphasis added). Nor should it be, because the use of some amount of video content is ubiquitous across the internet, and plaintiff's theory would expand VPPA liability to an infinite number of businesses that use video media for any purpose. Courts in this district and throughout the Ninth Circuit have overwhelmingly rejected such an expansive approach to VPPA, and this Court should do the same. *See Tapestry, Inc.*, 697 F. Supp. 3d at 995; *see also Cantu v. Sunrun Inc.,* No. 23-CV-974-JO-AHG, 2023 WL 11795670, at *3 (S.D. Cal. Nov. 22, 2023).[1]

*Second*, Plaintiff fails to plead that the provision of video content is the "focus" of Zillow's real estate marketplace. Even Plaintiff's Complaint shows that the *focus* of Zillow's business is to be a real estate marketplace platform, (Compl. ¶ 1) and one tool it made available to agents who wanted to showcase a property was a "video walkthrough tour." *Id.* ¶ 18. Plaintiff argues it necessarily follows that Zillow is "engaged *in the business* of delivering video tour walkthroughs." Opp. at 6:10 (internal quotations omitted) (emphasis added). By that logic, every company operating a website that displays a single video, even for ancillary purposes, would be "engaged in the business" of delivering video content. As discussed above, courts have rejected such an expansive interpretation of "videotape service providers" under VPPA.

Instead, a videotape service provider is a company that *focuses* on video content, such as a tape rental store or a website that exists specifically to provide significant video content to the public. *See Stark v. Patreon, Inc.,* 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022) (cited by Plaintiff) ("gaming and entertainment" website was a "videotape service provider" because it existed specifically to provide audiovisual content and monetize that content). Plaintiff does not (and cannot) allege that Zillow focuses on video content. Whereas Plaintiff cites *Stark*, this case is more comparable to *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023), where the court distinguished *Stark*. After reviewing several cases considering this issue, Judge Hayes concluded "the allegations in the FAC concerning the volume and role of the video

[1] *Salazar v. National Basketball Association*, 118 F.4th 533 (2d Cir. 2024), cited by Plaintiff, does not hold otherwise. The Second Circuit merely held that a defendant can be a video tape service provider even if it also deals in non-video content. *Id.* at 548.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

content at issue in this case do not support an inference that the videos viewed by Plaintiffs are more than peripheral to Defendant's business." *Id.* Similarly, Plaintiff fails to plead any facts showing that Zillow's alleged publication of video walkthrough tours was the *focus* of its business, as opposed to a mere tool that Zillow made available to agents.

*Finally*, Plaintiff's attempt to draw a distinction between types of marketing content fails. Specifically, Plaintiff argues that *Hershey, Jostens, Cantu,* and *JP Boden* are inapposite because the defendants in those cases "used audiovisual content to promote their *own* products" whereas Plaintiff claims Zillow "showcase[s] others' real estate properties." Opp. at 7 (emphasis in original). But Plaintiff does not cite a single case holding that VPPA's application turns on such a distinction. Nor does Plaintiff's proposed distinction make any sense. Under Plaintiff's theory, videos used by a property developer to market homes it constructed would not cause the developer to be a video tape service provider, yet Zillow becomes a video tape service provider once the developer posts a video to Zillow's website. The Court should reject this approach because, in both situations, the video is being used as a mere tool to market or showcase a real estate listing. Plaintiff's effort to shoehorn Zillow's business into the statutory definition of being "engaged in the business… of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" is not plausible. 18 U.S.C §2710(a)(4).

### B. Plaintiff is Not a "Consumer"

Plaintiff is not a "consumer" under VPPA because merely "registering" on Zillow's website fails to establish a continuous and substantive relationship with Zillow. Mot. at 7; *See Ellis v. Cartoon Network*, 803 F.3d 1251, 1256 (11th Cir. 2015) ("Subscriptions involve some or most of the following factors: payment, registration, commitment, delivery, expressed association, and/or access to restricted content."). Plaintiff's arguments to the contrary all fail.

*First*, Plaintiff fails to allege anything beyond registering his email address and viewing videos on Zillow's website. The Complaint states that "[c]reating an account permits users to save their real estate searches and easily access Zillow site materials they previously viewed, including video content." Compl. ¶22. Absent from paragraphs 26-31 of the Complaint (entitled "Plaintiff's Experience") are any allegations that Plaintiff actually saved any searches or recalled

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

any previously-viewed videos. Regardless, merely gaining the ability to save real estate searches as a registered user does nothing to establish a connection or relationship to video content that is unique or different from the casual consumer who did not register. Thus, the Complaint is insufficient under VPPA for merely pleading "the equivalent of adding a particular website to one's Internet browser as a favorite, allowing quicker access to the website's content." *Ellis v. Cartoon Network, Inc.* 803 F.3d 1251, 1257 (11th Cir. 2015).

Merely signing up for an account is similarly insufficient under VPPA. *See Tawam*, 684 F. Supp. 3d at 1062 (dismissing VPPA claim where plaintiffs alleged they "signed up for an email mailing list provided by Defendant and separately viewed videos on Defendant's website"). Indeed, following the Eleventh Circuit's seminal decision in *Ellis*, courts have held that being a "subscriber" requires an ongoing and substantial affiliation, not mere casual content consumption. Mot. at 7.[2] Plaintiff does not plead payment to Zillow, commitment to Zillow, delivery by Zillow, expressed association with Zillow, or access to any restricted content.

*Second*, Plaintiff claims that he is a "consumer" under the Second Circuit's recent decision in *Salazar v. National Basketball Association*, 118 F.4th 533, 553 (2d Cir. 2024), (Opp. at 10:9-15) but this argument also fails. VPPA defines "consumer" as "any . . . subscriber of goods or services from a video tape service provider." 18 U.S.C. §2710(a)(1). The vast majority of courts, including courts in this district, have held that a plaintiff can only be a "consumer" if they subscribe to "goods and services" related to video content. *See, e.g., Rodriguez v. JP Boden Servs. Inc.,* No. 23-CV-00534-L-VET, 2024 WL 559228, at *4 (S.D. Cal. Feb. 12, 2024). Although the Second Circuit found "goods and services ... is not cabined to only audiovisual 'goods or services[,]'" it held that the plaintiff was a "subscriber" for additional reasons, because, by providing his IP address and other personal information to the NBA "in return for periodically receiving the online newsletter" his relationship with the NBA was "distinct from

---

[2] Plaintiff attempts to distinguish *Ellis* on its facts (Opp. at 9-10), but Plaintiff's alleged relationship with Zillow is no stronger than the defendant's insufficient relationship with the plaintiff in *Ellis*. Analogous or not, courts cite approvingly to *Ellis's* framework, which requires dismissal here. *See Tawam,* 684 F. Supp. 3d at 1061.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

its relationship with casual NBA.com video-watchers who had not signed up for the newsletter." *Salazar v. Nat'l Basketball Ass'n,* 118 F.4th at 544, 552. *Salazar* does not save Plaintiff's claim.

As a threshold matter, *Salazar* would not apply here because Plaintiff fails to plead that he received *any* goods or services from Zillow. Indeed, unlike a "subscription" to the NBA's online newsletter (which *Salazar* deemed a "good or service"), the Complaint does not plead that Plaintiff signed up for or regularly received any goods or services from Zillow. The only feature Plaintiff claims to have received was the ability to "save their real estate searches." Compl. ¶22. This is not a "good or service." *See Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) ("a VPPA subscriber is not just someone who provides her name and address to a website, for some undisclosed purpose or benefit.").

Moreover, *Salazar's* ruling that the plaintiff was a "subscriber" to the NBA's newsletter is inapposite. Plaintiff argues that, under *Salazar*, he is a "subscriber" merely because he registered his email address with Zillow. *See* Opp. at 10:9-15. But the Second Circuit did not make such a sweeping ruling. In fact, the Court clarified that "[o]ur ruling is narrow" and limited to the facts of Salazar's specific relationship with the NBA's significant inventory of videos[3] and its newsletter. *Salazar*, 118 F.4th at 553.

In so ruling, the Second Circuit did not purport to undermine the Eleventh Circuit's analysis in *Ellis*. *Id.* at 551. It ruled that a "subscriber" relationship existed on *its particular facts*, which rendered "the NBA's relationship with [plaintiff] distinct from its relationship with casual NBA.com video-watchers who had not signed up for the newsletter." *Id.* at 552. In other words, *Salazar* and *Ellis* both ask the same essential question: whether plaintiff's relationship with the defendant regarding the delivery and receipt of goods or services relating to video content is materially different from the general public's relationship with the defendant. *Cf. Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (no relationship providing "access to exclusive or restricted content"). Plaintiff's paltry allegations that, in contrast to the

---

[3] The decision characterized the NBA as offering "a broad selection of video content." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 537 (2d Cir. 2024).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

general public, he provided his email address to Zillow and could save his Zillow searches, fail to pass muster under *Salazar, Ellis*, or any other authority cited by the parties.

If the Court determines that *Salazar* and *Ellis* are irreconcilable, it should follow prior decisions from district courts in the Ninth Circuit in applying *Ellis* and/or requiring plaintiffs to plead a substantial relationship with the defendant. *See, e.g., Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) ("a VPPA subscriber is not just someone who provides her name and address to a website, for some undisclosed purpose or benefit."); *Tawnam*, 684 F. Supp. 3d at 1061 (signing up for an email mailing list insufficient to establish a subscription); *Carroll*, 2024 WL 1091193, at *2 (dismissing VPPA claim where plaintiffs "d[id] not allege that they provided Chick-fil-A with their information or payment, registered for or created a profile on the app, committed to receiving future videos, or used the app to access any videos that were not freely available on Chick-fil-A's websites."). This standard gives effect to the plain meaning of "subscriber," which entails "some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *See Ellis*, 803 F.3d at 1256. Plaintiff has clearly failed to allege he is a "subscriber" by merely providing his email address and being able to save his searches. *See id.*

**C. Plaintiff Fails to Plead Specific Disclosure of Video Materials**

Plaintiff argues he is "not required to identify each video he viewed" on Zillow.com. Opp. at 11. But the Complaint's defect is not that he failed to identify "each" video that he viewed; rather it is that he failed to identify *any* specific video information allegedly disclosed. Plaintiff wishes to rely on conclusory allegations that he "requested many of Defendant's video walkthrough tours[.]" *Id.*; citing Compl. ¶¶ 19, 28-30. However, these generalized allegations are contradicted by the screenshot included after paragraph 30. *See Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (no obligation to accept allegations as true where they are contradicted by documents relied on by the Complaint). The screenshot is alleged to reflect Plaintiff's "site activity, including specific records of the content Plaintiff viewed," but in reality does nothing of the sort. Compl. ¶ 30. At best, it indicates that Facebook logged 18 instances in which Plaintiff accessed Zillow.com. *Id.* Beyond the nonspecific

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

allegation that Plaintiff "requested many" videos, there are no facts to plausibly infer that a disclosure of Plaintiff's personally identifiable information "having requested or obtained *specific* video materials" occurred as required under the statute. *See* 18 U.S.C. § 2710(a)(3) (emphasis added). Accordingly, his claim fails.

## II. PLAINTIFF'S CIPA CLAIM FAILS

Plaintiff fails to meaningfully engage in the relevant authorities as applied to the Complaint's allegations as pled, choosing instead to string cite cases involving pixel technologies regardless of their differences in configurations on different websites with different factual allegations that render Plaintiff's reliance on those cases inapposite. On the insufficient facts in Plaintiff's Complaint in *this* case, dismissal is appropriate under Rule 12(b)(6) because Plaintiff does not and cannot plead a predicate violation of the first three prongs of Section 631(a), and without a predicate violation, Plaintiff cannot plead that Zillow aided and abetted any third party—like Meta/Facebook—to wiretap Zillow's own communications with Plaintiff.

### A. Plaintiff Does Not Plead "Contents" of Any Communication Intercepted in Transit

Plaintiff ignores Zillow's argument, and thereby concedes, that Zillow cannot be liable for directly violating CIPA because a party to a communication cannot be liable for wiretapping.[4] Mot. at 11-12. Instead, he pivots to an argument not included in his Complaint that Meta violated CIPA and Zillow aided and abetted that violation. Plaintiff now argues that: (i) Meta intercepted "contents" of his communications with Zillow; and (ii) it intercepted those contents "in transit." Both arguments are misplaced and his CIPA claim should be dismissed.

*First*, Plaintiff confirms that he pleads no facts about the "contents" of any communication he had with Zillow through its website, but rather mere "records" of content Plaintiff allegedly requested or viewed. Opp. at 4. Plaintiff cites to Facebook's online resource about off-Meta activity data, which includes only generic activity categories, not data that divulges the content of a user's communications with the website in which the pixel is

[4] Plaintiff also does not address his failure to allege any interception of a communication over a telephone line, rendering it legally impossible for him to state a claim for violation of the first prong of Section 631(a). *See* Mot. at 12.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

integrated, much less the contents of *Plaintiff's* communications with Zillow. *Id.*; citing Compl. ¶ 30 (citing *Review your activity off Meta technologies,* FACEBOOK, https://www.facebook.com/help/2207256696182627 (explaining categories, not the substance or contents, of events that may be transmitted to Facebook)); *see also* Opp. at 13; citing Compl. ¶¶ 57-60 (allegations reciting the mere elements of the claim). Based on Plaintiff's allegations and references, all that Meta *may* receive are website functions that Plaintiff executed, not their content. Along with his Facebook ID and email, which the law unequivocally holds are not "contents," this is all that Plaintiff pleads in his Complaint and it is not enough to state a claim. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (user's Facebook ID and browsing history when automatically gathered are not content); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) ("name, address, email address or phone number" are not content); Opp. at 4; citing Compl. ¶¶ 26-27, 29-30.

Plaintiff's reliance on pixel cases involving the alleged disclosure of personal health or financial data is misplaced because none of Plaintiff's barebones allegations remotely resembles the contents of the alleged data disclosures in those cases or raises any of their privacy concerns. To wit, *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *4 (W.D. Wash. Nov. 14, 2024), involved alleged disclosure of personal health information from users' searches, orders, and filling of medical prescriptions on a website; *Cole v. Quest Diagnostics, Inc.*, No. 2:23-CV-20647-WJM, 2024 WL 3272789, at *4 (D.N.J. July 2, 2024), involved data about who ordered and accessed medical diagnostic tests and other information that "allow[ed] Facebook to know 'that a patient had received and was accessing test results'"); *Smith v. Google, LLC,* No. 23-CV-03527-PCP, 2024 WL 2808270, at *5 (N.D. Cal. June 3, 2024), involved collection of "financial data through tracking tools installed on several tax preparation websites."; and *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795, 798 (N.D. Cal. 2022), involved pixels allegedly installed on medical provider websites that in turn disclosed users' personal health information. Indeed, the court in *In re Meta Pixel Healthcare Litig.* was careful to differentiate between general Internet commercial communications, which are presumably not confidential, and those made in the context of the patient-medical provider

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

relationship which "are almost uniquely personal." *Id.* ("[U]nlike communications made while inquiring about items of clothing on a retail website, . . . 'One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up.'").

*Second*, Plaintiff fails to show that any "contents" of communications were intercepted while in transit. Plaintiff's "in transit" allegation consists of one word: "whenever"—in that "'whenever' he requested audiovisual content . . ., that information was passed to Meta through its Pixel software, from which this Court can plausibly infer that the transmission occurred in 'real-time.'" Opp. at 15. This argument is both logically and legally unsound. In Plaintiff's own words, his communications were "passed" to Meta, meaning they were not received by Meta simultaneously but after he "requested" the content from the website. This sequence is "essentially one of logging and then transmitting." *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). Using the word "whenever" once "is simply not enough without the addition of specific facts that make it plausible [Zillow or anyone else] is intercepting [Plaintiff's] data in transit." *Id.*

Plaintiff miscites this Court's holding in *Esparza*, 2024 WL 559241 at *3, where the Court found sufficient plaintiff's allegations that a third party CarNow's chat technology was "embedded in Defendant's website, and that 'whenever a consumer chats via Defendant's Website, the chat is routed *through* CarNow's servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access.'" (emphasis in original). No such allegations can or do exist here. By definition, any data that *may* be received by Meta is transmitted after Plaintiff takes action on the website, not during the interaction—i.e., events *may* be transmitted to Facebook *after* the user has taken those actions on the website. Opp. at 4; citing Compl. ¶ 30. This is "logging and then transmitting[,]" not interception of a message before it is received by the intended recipient. *Rodriguez*, 2022 WL 214552 at *2; *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

### B. Plaintiff Fails to State a Claim for Aiding and Abetting Liability

Plaintiff cannot state an aiding and abetting claim because he fails to allege a predicate violation of Section 631(a). *See, e.g., Esparza*, 2024 WL 655986, at *4. Whether he alleges Zillow directly violated CIPA, or as he now claims, Meta directly violated it, (Opp. at 17) he fails to establish that either "engaged in wiretapping or eavesdropping, and even if there was such a finding, that would not speak to Defendant's [i.e., Zillow's] knowledge." *Esparza*, 2024 WL 559241 at *6. Without a predicate violation of Section 631(a), and "[a]bsent factual allegations on [Zillow's knowledge], Plaintiff has failed to state an aiding and abetting claim against [Zillow]." *Id.*

## III. PLAINTIFF FAILS TO PLEAD FRAUDULENT CONCEALMENT

Plaintiff reads allegations into his Complaint that he actually does not plead. He pleads no facts with any particularity, as he must, about what Zillow allegedly concealed or had a duty to disclose; any due diligence undertaken by Plaintiff to discover any inaccurate disclosures by Zillow; or any "other facts warranting a finding of fraudulent concealment." *Hargreaves*, 2009 WL 10673987, at *3. All he alleges is: Zillow possessed "knowing and active concealment," but he does not identify any facts; that Plaintiff was "ignorant of the information essential to the pursuit of these claims," but not what that essential information is; and that Zillow "was under a duty to disclose the true character, quality, and nature of its activities to Plaintiff," but not what facts Zillow was duty bound to disclose or why it owed that duty. Compl. ¶¶ 39-40. Plaintiff "cannot meet the particularity requirements for alleging fraud by simply couching the Defendants' alleged failure to disclose as 'fraudulent concealment.'" *Hargreaves*, 2009 WL 10673987, at *3.

## IV. CONCLUSION

For the foregoing reasons and incurable defects, Zillow requests that the Court dismiss Plaintiff's Complaint without leave to amend.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Respectfully submitted,

Dated: December 6, 2024 GORDON REES SCULLY MANSUKHANI LLP

By: *s/ Sean D. Flaherty*
Sean D. Flaherty
Hazel Mae B. Pangan
Attorneys for Defendant
ZILLOW GROUP, INC.